IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CREDELL STRONG, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-1229 |
| v. | ) | |
| | ) | Judge Mark R. Hornak |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

I. INTRODUCTION

Credell Strong ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the Court on cross motions for summary judgment. (ECF Nos. 10, 12). The record has been developed at the administrative level. For the reasons which follow, Plaintiff's Motion for Summary Judgment will be GRANTED in part and DENIED in part. Defendant's Motion for Summary Judgment will be DENIED. The decision of the Commissioner is VACATED, and the matter REMANDED to the Commissioner for further proceedings not inconsistent with this Opinion.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on February 9, 2009, claiming a disability onset of January 1, 1979. (R. at 119 – 22)[1]. Plaintiff claimed that his inability to work stemmed from being bipolar and unable to read or write. (R. at 132). Plaintiff was initially denied SSI on September 14, 2009. (R. at 74 – 85). A hearing was scheduled for December 17, 2010, and Plaintiff testified, represented by counsel. (R. at 30 – 49). A vocational expert was also present to testify. (R. at 30 – 49). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on January 14, 2011. (R. at 14 – 29). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 17, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 6).

Plaintiff filed his Complaint in this Court on August 29, 2012. (ECF No. 3). Defendant filed an Answer on December 14, 2012. (ECF No. 6). Cross motions for summary judgment followed. The matter has been fully briefed. (ECF Nos. 11, 13, 14).

## III. STATEMENT OF FACTS

### A. General Background

Plaintiff was born on August 25, 1956, was fifty two years of age at the time of his application for benefits, and was fifty four years of age at the time of the ALJ's decision. (R. at 33, 128). Plaintiff completed only the seventh grade, and had attempted to pass his GED exams three times, without success. (R. at 34). The record is equivocal with respect to whether Plaintiff required special educational assistance while in school. (R. at 42, 136 – 37). Plaintiff had no vocational or post-secondary education. (R. at 137). Plaintiff's last job was in 2007 as a "laborer" for a recycling business. (R. at 133). He had previously been incarcerated on-and-off for approximately twenty seven years for drug and theft-related offenses. (R. at 170, 187).

---

[1] Citations to ECF. Nos. 7 – 7-8, the Record, *hereinafter*, "R. at ___."

Plaintiff now lived in a home with his twin brother. (R. at 33, 139). His wife was deceased, and his adult daughter lived out of state. (R. at 169 – 70). He subsisted on welfare benefits from the state, and had a medical assistance card. (R. at 34, 131).

B. <u>Medical History</u>[2]

Plaintiff's knees were x-rayed on October 9, 2010. (R. at 219). Imaging results revealed mild degenerative changes in all three compartments of both knees with tiny, marginal osteophytes. (R. at 219). Joint spaces were maintained, and no other abnormalities were noted. (R. at 219). An x-ray of Plaintiff's lumbar spine was also taken that day. (R. at 221). Straightening of the normal lordotic curve was seen, and small anterior and lateral marginal osteophytes were present at all levels, with mild to moderate disc space narrowing. (R. at 221). The diagnostic impression was degenerative changes in the lumbar spine, most prominently at the L2-L3 level. (R. at 221).

At a November 2, 2010 examination with primary care physician Kaushik P. Patel, M.D., Plaintiff complained of knee pain and swelling, and lower back pain. (R. at 211). Dr. Patel observed pain in Plaintiff's left knee which was greater than in the right knee, and diagnosed degenerative joint disease, osteoarthritis, and mechanical joint pain. (R. at 211). An MRI of Plaintiff's lumbar spine was conducted on November 10, 2010. (R. at 223). Imaging revealed multilevel degenerative changes with at least moderate central canal narrowing at the L2-L3 level secondary to disc protrusion, and at least moderate neural foraminal narrowing on the left at the L3-L5 levels. (R. at 224). There was severe disc space narrowing at the L2-L3 level, as well. (R. at 224).

On November 20, 2010, Plaintiff appeared for a follow-up with Dr. Patel with the same

---

[2] In his Motion for Summary Judgment, Plaintiff is primarily concerned with the ALJ's conclusions regarding the impact of physical impairments on Plaintiff's ability to work. (ECF No. 11 at 5 – 19). As a result, discussion will primarily focus upon the facts on record which pertain to Plaintiff's physical impairments.

3

complaints. (R. at 212). Dr. Patel observed Plaintiff to have a generally "good" appearance. (R. at 212). Dr. Patel's observations remained the same. (R. at 212). Similar findings were made by Dr. Patel on December 14, 2010. (R. at 213). On December 28, 2010, Dr. Patel completed a physical capacity evaluation of Plaintiff. (R. at 258 – 61). In a short narrative statement at the beginning of the evaluation, Dr. Patel opined that Plaintiff was permanently disabled from all meaningful employment due to degenerative joint disease, lower back pain, knee pain, an abdominal aortic aneurysm, hypertension, and bipolar disorder. (R. at 258).

Dr. Patel went on to indicate in his evaluation that Plaintiff could walk and stand no more than one hour in an eight hour work day, could sit no more than one hour, could lift no more than five pounds occasionally, could not perform repetitive grasping, pushing, pulling, fine manipulation, or use of foot controls, could only occasionally bend, but could never squat, crawl, or climb, could not complete a normal work day without rest breaks in excess of those customarily provided, and would likely miss at least fifteen days of work per month. (R. at 259 – 60). Plaintiff was considered to be totally disabled as of November 24, 2009. (R. at 260).

C. Administrative Hearing

Plaintiff testified that he had abused heroin, cocaine, and alcohol in the past. (R. at 35). He had been incarcerated for drug offenses, and was still on probation at the time of his administrative hearing. (R. at 35). He was released from jail in April 2009. (R. at 35). Plaintiff initially stated that his substance abuse ceased four years earlier; however, he later revised that number to two-and-a-half years. (R. at 36, 44).

Since his release from jail, Plaintiff had spent a great deal of time attempting to earn a GED. (R. at 35). He had failed to obtain his GED on three occasions. (R. at 34). Plaintiff was able to use mass transit, independently, and could clean and go shopping with some help from

4

his brother. (R. at 37). Plaintiff kept a regular daily schedule. (R. at 43). Plaintiff took periodic naps due to pain. (R. at 43).

Plaintiff claimed that his greatest barrier to sustaining full-time work was pain in his knees and ankles. (R. at 37). He claimed that he was going to be scheduled for knee surgery, and that he was also going to be receiving cortisone injections for his knee pain. (R. at 37 – 38). He did not believe that he could stand for more than fifteen to thirty minutes without swelling. (R. at 38). Due to lower back pain, Plaintiff did not lift anything heavier than a gallon of milk, and could not lift a gallon of milk repeatedly without pain. (R. at 38 – 40). Plaintiff testified that he took medication for his blood pressure and psychiatric conditions. (R. at 36, 42). He regularly engaged in therapy and rehabilitation programs. (R. at 40 – 41). Plaintiff said that he no longer suffered limitations from his psychological conditions since beginning his current medication regimen. (R. at 42). However, he did believe that his attention and concentration were short because his comprehension was "slow." (R. at 42).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level, and work background would be eligible for a significant number of jobs in existence in the national economy if limited to medium work involving: lifting fifty pounds occasionally, and lifting ten to twenty-five pounds frequently, only simple instructions, no interaction with crowds, no close supervision, no close interaction with co-workers, no changes in the work setting, and tasks requiring no greater than a third grade reading level. (R. at 46). The vocational expert responded that such a person would be capable of working in "hand packers" positions, with 333,000 such jobs available in the national economy, in "cleaners" positions, with 2.2 million such jobs available, and in "hand working" occupations, with 67,000 such jobs available. (R. at 46 – 47).

5

The ALJ went on to ask whether jobs would be available to a person at the light level with a sit/stand option. (R. at 47). The vocational expert replied that the same jobs would be available, except that the job numbers would change: 200,000 jobs available for "hand packing" positions, 192,000 jobs for "cleaners," and 115,000 jobs for "hand working" occupations. (R. at 47). The vocational expert testified that sedentary level jobs would also be available to the hypothetical person. (R. at 47 – 48). The ALJ asked the vocational expert whether his testimony "conforms to the DOT description of the jobs," to which the vocational expert answered in the affirmative. (R. at 48).

## IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the

---

[3] Section 405(g) provides in pertinent part:
   Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.
42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
   The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 90-91 (3d. Cir. 1986).

## V.   DISCUSSION

In his decision, the ALJ concluded that Plaintiff suffered medically determinable severe impairment in the way of reading disorder, bipolar disorder, anxiety disorder, degenerative joint disease of the knees, and degenerative disc disease of the lumbar spine. (R. at 19). As a result of said impairments, the ALJ found that Plaintiff would be limited to light work allowing for Plaintiff to alternative between sitting and standing throughout the day, and requiring no more than simple instructions, simple repetitive tasks, simple decision-making, and a third grade reading level, and involving no assembly line-rate pace, changes in the work setting, crowds, intensive supervision, and close interaction with co-workers. (R. at 21). Based upon the testimony of the vocational expert, the ALJ determined that Plaintiff was capable of engaging in a significant number of jobs in existence in the national economy. (R. at 25 – 26). Plaintiff was not, therefore, awarded SSI. (R. at 26).

Plaintiff objects to the decision of the ALJ, arguing that he erred in failing to adequately define the parameters of the sit/stand option in his residual functional capacity assessment

8

("RFC") and hypothetical, in failing to explain what weight was given to the findings within Dr. Patel's functional assessment, in relying upon flawed testimony by the vocational expert, and in failing to provide an adequate basis for discrediting Plaintiff's subjective complaints. (ECF No. 11 at 5 – 19). Defendant counters that the ALJ provided substantial evidence to support his decision, and should be affirmed. (ECF Nos. 13, 14). Except as to the factors applied by the ALJ to making certain credibility assessments, the Court agrees with Defendant.

Plaintiff first argues that his need to alternate between sitting and standing during the work day must be more clearly defined by the ALJ, because the greater the limitation of Plaintiff's ability to stand, the more likely he would be relegated to sedentary work, as opposed to light exertional work – as found by the ALJ. (ECF No. 11 at 5 – 7). This is a particularly important distinction, because Plaintiff's age would allegedly dictate a finding of disability under the Medical-Vocational Guidelines if limited to sedentary work. (ECF No. 11 at 5 – 7).

Plaintiff cites to Social Security Ruling ("S.S.R.") 83-12[5] (1983 WL 31253) for the proposition that the ALJ must "determine whether the reduction of the claimant's ability to stand or walk is slight (in which case the light grid would apply), or significant (in which case the sedentary rules apply), and to explicitly state those findings in the RFC finding." (ECF No. 11 at 6 – 7). With respect to provision of the ability to alternate between sitting and standing in a hypothetical or RFC assessment, S.S.R. 83-12 states that because unskilled types of jobs are "particularly structured so that a person cannot ordinarily sit or stand at will . . . a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.* at *4. Presently, the ALJ did just that. Further, by specifically indicating to the vocational expert that

---

[5] Plaintiff also references S.S.R. 96-9p (1996 WL 374185) in support of his argument for greater specificity with respect to the sit/stand option offered by the ALJ. (ECF No. 11 at 5 – 7). However, the court finds the ruling inapplicable. The ALJ found that Plaintiff was capable of light work, and S.S.R. 96-9p deals exclusively with the "implications of a residual functional capacity for less than a full range of sedentary work."

9

the hypothetical person was limited to light work and should be afforded the ability to alternate between sitting and standing, it is implicitly established that the ALJ believed that Plaintiff's limitations in standing and walking were slight. No more was required. *Joyce v. Comm'r of Soc. Sec.*, 2012 WL 6707737 at *5 (D.N.J. Dec. 2012).

Plaintiff next argues that the ALJ erred in his treatment of Dr. Patel's disability assessment by stating only that he was "not required to give controlling weight to Dr. Patel's opinions." (ECF No. 11 at 7 – 11; R. at 25). While the Court does not take issue with Plaintiff's assertion that the ALJ is required to indicate the degree of consideration afforded a treating physician's opinion, the court finds that the ALJ's decision clearly met this requirement. Following a discussion of Plaintiff's brief treatment history with Plaintiff, in which there were few – if any – indications of functional limitation as severe as noted in Dr. Patel's final assessment, or indications of use of pain medication or other treatment methodologies, the ALJ stated that "Dr. Patel's assessments are unsupported by medically acceptable clinical and laboratory diagnostic techniques." (R. at 24 – 25). The fact that the ALJ found Dr. Patel's conclusions to be without support, and his decision to omit reference to any of Dr. Patel's limitations findings in his hypothetical or RFC assessment, is a clear indication of the weight given to Dr. Patel's opinion by the ALJ: none.

The "opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430

(citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). Such is the case here, and the ALJ's overall decision makes clear the lack of weight accorded Dr. Patel's disability assessment.

Plaintiff next argues that reliance upon the testimony of the vocational expert by the ALJ was flawed, because the vocational expert failed to provide Dictionary of Occupational Titles ("DOT") numbers for the jobs provided, cited to a job that does not exist in the DOT, and provided jobs which do not account for a third grade reading level. (ECF No. 11 at 12 – 14). Plaintiff also asserts that the ALJ failed to inquire about inconsistencies between the DOT and the vocational expert's testimony. (ECF No. 11 at 12 – 14).

With respect to the provision of DOT numbers by the vocational expert, no case law is advanced to suggest that the vocational expert was required to provide DOT numbers. *Nahory v. Colvin*, 2013 WL 3943512 at *3 (W.D. Pa. Jul. 30, 2013) (citing *Irelan v. Barnhart*, 82 F. App'x 66, 72 (3d Cir. 2003)). The failure to provide such numbers by the vocational expert is not – in and of itself – error. Also, while Plaintiff argues that there is no DOT listing for "hand working occupations," there are – as pointed out by Defendant – "hand worker" positions in the DOT: 794.687-054 – "STRINGER (paper goods) alternate titles: hand worker," and 794.687-010 – "ASSEMBLER, PRINTED PRODUCTS . . . may be classified according to method of assembly and be designated Hand Worker."

Next, even if the reading level example used by Plaintiff as a requirement for performance of the "hand packer" position were the correct standard, Plaintiff provides the court with no evidence that Plaintiff's reading level – third grade – precluded him from meeting the language requirement. The language requirement under 920.587-018 is as follows:

> 01 LANGUAGE DEVELOPMENT Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of

11

numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses.

Plaintiff provides no evidence that the vocational expert did not account for Plaintiff's reading aptitude within the elicited occupational categories when he provided job numbers. No error was demonstrated, here. Plaintiff further claims that "almost all" of the cleaning jobs within the DOT are at the medium exertional level. However, "almost all," is not "all." Plaintiff provides no evidence that the vocational expert did not accommodate Plaintiff's limitation to cleaning positions that are light when job numbers were provided. Indeed, when the vocational expert testified about the availability of cleaning jobs at the medium level as opposed to the light level, the job numbers went down dramatically. (R. at 46 – 47). Once again, the court finds no error in this regard.

With respect to Plaintiff's last contention regarding the vocational expert's testimony, the court notes that an ALJ is required to inquire of the vocational expert whether his or her testimony is consistent with the DOT, and if not, to elicit testimony to explain any conflict. *Nahory v. Colvin*, 2013 WL 3943512 at *3 (citing S.S.R. 00-4p; *Burns v. Barnhart*, 312 F. 3d 113, 127 (3d Cir. 2002)). In the case at hand, the ALJ asked the vocational expert whether his "testimony conforms to the DOT description of the jobs." (R. at 48). The vocational expert replied that his testimony did so conform. (R. at 48). Plaintiff argues that the ALJ should have asked "about any possible conflicts." (ECF No. 11 at 14). Plaintiff's argument over terminology is a distinction without a difference. If the vocational expert's testimony conflicted with the DOT's job descriptions, it would obviously not have been in conformity with the job descriptions. There is no error, here.

Finally, Plaintiff urges the Court to find the ALJ's treatment of Plaintiff's subjective claims of pain and limitation to be without the support of substantial evidence. (ECF No. 11 at

12

15 – 19). In the Third Circuit, an ALJ is required to accord subjective complaints of pain similar treatment as objective medical reports, and weigh the evidence before him. *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). The ALJ is required to assess the intensity and persistence of a claimant's pain, and determine the extent to which it impairs a claimant's ability to work. *Hartranft v. Apfel*, 181 F. 3d 358, 362 (3d Cir. 1999). This includes determining the accuracy of a claimant's subjective complaints of pain. *Id.* While pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F. 3d at 122.

The Court finds that while much of the ALJ's discussion of evidence tending to diminish Plaintiff's credibility is generally proper, it is infected by the ALJ's stated consideration, without elaboration or explanation, of the fact that Plaintiff had a "criminal record." (R. at 22). Such a naked reference to the fact that Plaintiff had a criminal record does not, without more, demonstrate that it was properly considered in making a credibility assessment. *See, e.g.* Fed. R. Evid. 609. It may have been perfectly proper for the ALJ to consider such record, but perhaps not, given the ALJ's lack of explanation as to what consideration he gave that fact, and upon what basis. Given that, vacation and remand is the proper course here, in order to allow for that explanation and foundational support to be provided, or for a credibility determination made without that factor being considered.[6]

---

[6] The ALJ nonetheless properly considered a panoply of legitimate credibility factors. It is true that Plaintiff had a poor work history, he had limited treatment for his physical complaints, he provided inconsistent testimony about his cessation of substance abuse, he admitted his psychiatric conditions were controlled with medication, and he was capable of engaging in activities of daily living. (R. at 22 – 25). This is all evidence which tends to either contradict claims of disabling pain and limitation, directly, or which substantially calls into question Plaintiff's reliability. This is a proper basis for a credibility determination. That Plaintiff does not approve of the format of the ALJ's credibility discussion is not dispositive. An ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F. 3d 501, 505 (3d Cir. 2004). The ALJ simply declined

13

## VI. CONCLUSION

Based upon the foregoing, the Plaintiff's Motion for Summary Judgment GRANTED in part and is DENIED in part, Defendant's Motion for Summary Judgment is DENIED, and the decision of the ALJ is VACATED and the matter REMANDED to the Commissioner for further proceedings not inconsistent with this Opinion. Appropriate Orders follow.

Mark R. Hornak
United States District Judge

Dated: October 16, 2013

cc: All counsel of record.

---

to give Plaintiff's subjective complaints full weight, and proceeded to provide a substantial factual basis to explain why.

14